FRANK J. VISCONI, )
 )
    Plaintiff, )
 )
v. ) No. 3:12-cv-01012
 ) Chief Judge Haynes
 )
UNITED STATES OF AMERICA, )
 )
    Defendant. )

# MEMORANDUM

Plaintiff, Frank J. Visconi filed this action[1] under the Administrative Procedure Act ("APA"), 5 U.S.C. § 502 et seq. against the Defendant, the United States of America, seeking judicial review of alleged arbitrary and capricious agency action. Plaintiff's core claim is that the Board for the Correction of Naval Records ("BCNR") and the United States Marine Corps Headquarters Manpower Management Division, Military Awards Branch ("MMMA") failed to correct mistakes in his service record after Plaintiff made several documented requests. Plaintiff seeks equitable relief, specifically that the Court compel the BCNR and MMMA to correct Plaintiff's military service record to reflect his unrecorded medical treatment, correct dates of service, the unrecorded combat assignments, and his unrecorded awards. Plaintiff's specific claims arise from his allegations that

---

[1]In 2010, Plaintiff filed an action in the Court of Federal Claims and in response the Government filed a motion to dismiss. The Federal Claims Court dismissed Plaintiff's complaint for lack of subject matter jurisdiction, holding that Plaintiff failed to allege a claim under a money-mandating statute and that court lacked jurisdiction under the Tucker Act, Visconi v. United States, 98 Fed. Cl. 589 (Ct. Fed. Cl. 2011), and upon Plaintiff's appeal, the Federal Circuit affirmed. Visconi v. United States, 455 Fed. Appx. 986 (Fed. Cir. 2012).

1

he served several combat missions during his tour of duty in Vietnam, but his service record fails to reflect this combat service and the awards he received during his service in Vietnam. Plaintiff alleges that he discovered the discrepancies in his service record in 2006 and immediately filed the necessary documentation with the BCNR. The BCNR and MMMA denied Plaintiff's initial and subsequent requests to change his service record due to lack of evidence and the agencies' doubts of the authenticity of the documents that Plaintiff submitted.

Before the Court are Plaintiff's motion for summary judgment (Docket Entry No. 35) and Defendant's motion to dismiss, or in the alternative for summary judgment (Docket Entry No. 44). In his motion, Plaintiff contends, in sum, that despite the substantial evidence presented to the BCNR, the BCNR has refused to examine his evidence and to correct the mistakes in Plaintiff's military service. (Docket Entry No. 35). In addition, Plaintiff asserts that the BCNR lacks any proof contrary to Plaintiff's proof. Id. In its motion to dismiss, Defendant contends that the Plaintiff's claims lack factual bases because the BCNR decision was neither arbitrary nor capricious nor against the weight of the evidence. (Docket Entry No. 44).

For the reasons below, the Court concludes that the Plaintiff's motion for summary judgment should be denied and the Defendant's motion to dismiss should be granted. The Court concludes the agency's decisions to deny Plaintiff's request to amend his military service record were based upon substantial evidence and were neither arbitrary nor capricious.

### A. Review of the Record

#### 1. Plaintiff's Service

Plaintiff enlisted in the United States Marine Corps ("USMC") and began active duty service in July 1964. (Docket Entry No. 34-2). Plaintiff spent twelve weeks going through boot camp

2

training in San Diego, California. (Docket Entry No. 27, Administrative Record ("AR") at 491). In October 1964, after completing basic training, the USMC promoted Plaintiff from Private to Private First Class. Id. at 43. Plaintiff then spent sixteen weeks completing the infantry training regiment. Id. at 491. Plaintiff reported for duty in Okinawa, Japan in February 1965 and was later deployed to Chu Lai, Vietnam, where he served until April 1966. Plaintiff was assigned to a supply unit.

Plaintiff alleges that on June 18, 1965, he was a participant in a Search and Destroy mission in the vicinity of the Chu Lai base camp. Id. at 492. Plaintiff further alleges that he, along with other marines, were transported by helicopter to search for and engage in combat with some Viet Cong soldiers. Id. Plaintiff alleges that when the helicopter dropped him off, the soldiers were fired upon by some Viet Cong soldiers. Id. Plaintiff alleges that he sought cover in tall grass and was subsequently punctured in the knee by a hidden punji stick, a type of booby-trap. Later, Plaintiff alleges he received treatment from a Navy hospital corpsman for his wound, but did not require treatment at a hospital or medical facility. Id.

Plaintiff alleges that for the punji stick incident his squad leader recommended him for the Purple Heart Award, but Plaintiff never received the medal and does not know why. Id. at 493. "Maybe he never got around to ir; maybe he did and the documentation was lost; maybe he put in the recommendation and it was denied. I don't know to this day." Id. Neither these missions nor receipt of medical treatment are reflected in Plaintiff's medical or service records. Id. at 44-45.

Plaintiff next alleges that he was recommended for the Bronze Star Medal after a mission for which he volunteered in August 1965, "Operation Starlite." Plaintiff alleges:

> Operation Starlite was to take place over a two day period, 18-19 August, 1965. It was the first major offensive operation against the enemy. After finally being granted permission to join in the operation, I was transported by helicopter to a Command

3

> Post where Marine troops were gathering for the major offensive. I was not permitted to join with any of the landing units, probably because of my non-infantry status. For the most part, I remained back at the Command Post during the bulk of the operation, against my wishes. However, through persistent volunteering, I was allowed to join in the process of evacuating the wounded and dead Marines from the actual battle site(s). On no less than seven occasions, possibly more, I flew on board an evacuation helicopter to the battle site where I exited the helicopter and assisted in removing the wounded and dead from the field. On two particular occasions on the return trip, I had to take up the position of door gunner when the actual gunner was mortally wounded during the extraction, and since I was the only Marine on board that was not wounded. I knew how to operate the M-60 machine gun since I had received training on its operation in Boot Camp which was not that long before. On take off, I continued to spray machine gun fire into the perimeter of the battle zone to stave off the enemy onslaught, in order to prevent more Marines from being wounded and particularly to hopefully prevent the helicopter from being disabled. On all of these occasions, we returned safely to the Command Post where the wounded were tended to. At the conclusion of Operation Starlite, I was informed (once again) by one of the helicopter pilots, whom I believe was a Warrant Officer that I would be recommended for the Bronze Star. As in the first instance of the wound and the Purple Heart, I never heard anything after that.

Id. at 494. Yet, Plaintiff's official service records do not reflect Plaintiff's alleged participation in "Operation Starlite" nor his recommendation for the Bronze Star Medal.

Plaintiff explains that although he was assigned to a supply unit instead of a combat unit, he volunteered for the Search and Destroy mission because after being stationed in Vietnam he "could hear the sounds of small arms fire and loud explosions in the immediate vicinity. . . . [he] realized that [he] was misplaced and that, as a true Marine, [he] wanted to be, and belonged where there was some action." (Docket Entry No. 27 at 491). Yet, Plaintiff acknowledges that he was not trained for combat situations, save his experience at boot camp. Id. Plaintiff alleges that he volunteered for as many Search and Destroy missions and combat opportunities as he was able. Id.

Plaintiff's official combat history records reflect that Plaintiff was in Chu Lai, Republic South Vietnam from May 24, 1965 to February 11, 1966. Id. at 257. Yet, Plaintiff contends that these

4

dates are incorrect because he was in fact "bumped" three times over a period of twenty days while waiting to leave Vietnam after his injuries from the punji stick and did not return home until March 1966. See id., Plaintiff's Written Remarks. Plaintiff's medical records, however, reflect that on February 14, 1966 Plaintiff underwent a medical examination in Camp Smedley D. Butler in San Francisco, California. Id. at 282. Plaintiff's medical records reflect that on February 14, 1966, Plaintiff was "examined this date and was found physically qualified for transfer." Id. The dates on Plaintiff's medical records were only three days after Plaintiff's official record reflects that he left Vietnam. Yet, Plaintiff is adamant that the dates on his service record are incorrect, but does not provide any official documentation to support his assertions.

After leaving Vietnam, Plaintiff reported for duty at the Landing Force Training Unit in Little Creek, Virginia in April 1966. Id. at 156. Thereafter, Plaintiff received a promotion to the rank of Corporal. Id. In December 1966, Plaintiff received a promotion to the rank of Sergeant. Id. at 157. From November 5, 1967 through November 17, 1967, Plaintiff was assigned to a "temporary additional duty" ("TAD"). Id. at 600. The TAD's primary mission was for Plaintiff to present a small arms weapons display, deliver lectures, and answer questions while on the U.S.S. Capricornus during an open house in Port Everglades, Florida. Id. Plaintiff received commendation on his performance during the TAD. Id.

The USMC released Plaintiff from active duty on July 29, 1968 and transferred him to the Marine Corps Reserve. Id. at 255. In 1969, Plaintiff asserts that he received a promotion to the rank of Staff Sergeant, but this promotion is not reflected in his official service records. Id. at 55. Plaintiff received a "Certificate of Good Conduct" in July 1964. Id. at 57. Plaintiff's record regarding "Offenses and Punishments" does not show any instances of bad conduct. Id. at 58. Plaintiff received

5

an honorable discharge from the rank of Staff Sergeant in the United States Marine Corps on July 19, 1970. Id. at 101.

Plaintiff alleges that he stored his documents from his service in the USMC in two bags in his basement. In the summer of 1979, Plaintiff's home suffered from a basement flooding that led to the cracking of two walls in the basement. Id. at 64-65. Plaintiff alleges that nothing that Plaintiff stored in the basement was salvageable due to the water and mud damage. Plaintiff admits that he "has no documentation and [he] recall[s] little detail" of his experience in Vietnam. Id. at 495. Plaintiff also "takes medication ever day for panic disorder and anxiety." Id.

## 2. Plaintiff's Applications to BCNR

In 2006, after Plaintiff discovered the alleged errors in his service record, Plaintiff submitted an application for the correction of military records under the provisions of 10 U.S.C. § 1552. AR at 31. Yet, "after a thorough review of . . . official military record, the records of the [MMMA] Headquarters, those of the Navy Department Board of Decorations and Medals, and Fleet Marine Force, Pacific," the MMMA denied Plaintiff's request for the awards of the two medals. Id. at 283. The MMMA cited the lack of "any evidence that [Plaintiff] was ever recommended for a personal award. . . . Since there is no evidence that a recommendation was submitted within the prescribed time limit, we can take no further action." Id. In addition, the MMMA cited the regulations:

> As required by regulations, in order for you to be considered for the award of a personal decoration, including the Bronze Star Medal, your commanding officer or another officer having personal knowledge of your actions must have submitted recommendation for the award within 3 years of the act or service.

Id. The MMMA also specifically addressed Plaintiff's qualification for the Purple Heart Medal:

> Verification of entitlement must be made by official entries in the service or medical records, and or casualty reports. A thorough review of your records and the records

6

at this Headquarters failed to reveal any documentation that would indicate you were injured under conditions which would qualify you for the Purple Heart Medal.

Id. Plaintiff's service awards are recorded in his "Combat History-Expeditions-Awards Record" and on Plaintiff's DD-214. Yet, neither of these records reflects Plaintiff's receipt of the Bronze Star Medal nor the Purple Heart Medal.

In 2009, Plaintiff submitted citations for a Bronze Star Medal and for a Purple Heart Medal. Id. at 374-78. The Manpower Management Division evaluated Plaintiff's application concerning the Bronze Star Medal and the Purple Heart Medal. On May 6, 2009, the Manpower Management Division of the Department of the Navy sent the following letter to Plaintiff on his request for a replacement of the Bronze Star Medal and Purple Heart Medal:

> Dear Mr. Visconi:
>
> This is in reply to your letter dated 2 March 2009 addressed to the Secretary of the Navy, regarding the correction of your military records to include the awards of a Bronze Star Medal and a Purple Heart Medal, and your promotion to Staff Sergeant. This Headquarters has been asked to reply on behalf of the Secretary of the Navy.
>
> The citation for the Bronze Star and the Purple Heart Medals that your provided cannot be made part of your record. **We do not believe that these document are authentic. The following are inconsistencies with the Bronze star citation: (1) The Bronze Star Citation that your provided is not the standard format citation issued during the period that your served in the U.S. Marine Corps; (2) The Commanding General, Fleet Marine Force Pacific was the awarding authority for the Bronze State Medal for actions in the Vietnam conflict; (3) the signature of LtCol Joseph A. Polidori appearing on the citation that you provided is not consistent with his signatures found in his official military personnel file. In addition, the Purple Heart medal has never been issued with a citation.**
>
> In regards to your Staff Sergeant promotion, Manpower Management Promotion reviewed your record and determined your DD 214 cannot be updated reflecting your promotion to Staff Sergeant because the promotion occurred after your release from active duty.
>
> I would like to make your aware of Public Law 109-437 of December 20, 2006

7

Case 3:12-cv-01012   Document 58   Filed 06/07/13   Page 7 of 16 PageID #: 1924

known as the Stolen Valor Act of 2005, which permits law enforcement officers to
procedural fraudulent claims, wear or receipt of military donations and medal.

(Docket Entry No. 43-2 at 199). By letter, Plaintiff responded that the inconsistent signature of Lt. Col. Polidori was most likely attributable to his assistant signing the citation on his behalf. (AR at 160).

The Department of the Navy sent Plaintiff a letter verifying the awards which Plaintiff was entitled for his service in Vietnam. AR at 180-81.

> Navy Unit Commendation award to Force Logistics Command for service in Vietnam during the period March 15, 1965 to March 15, 1967
>
> Good Conduct Medal for service from July 30, 1964 to July 29, 1967
>
> National Defense Service Medal
>
> Vietnam Service Medal with two bronze campaign stars
>
> Republic of Vietnam Meritorious Unit citation ribbon bar
>
> Republic of Vietnam Meritorious Unit Citation ribbon bar
>
> Republic of Vietnam Campaign Medal
>
> Rifle Marksman Badge

Id.

The Department of the Navy also explained that the citations Plaintiff submitted for the Bronze Star Medal and the Purple Heart Medal were unacceptable:

> This submittal is in a form and style that is not recognized by the awards branch nor one that have ever been used for th[e] [Bronze Star Medal] award. . . . Additionally, the citation you submitted as proof of your Purple Heart Medal cannot be accepted as there has never been a citation to accompany this award, only a certificate.

Id. The Department of the Navy also addressed Plaintiff's request for additional awards:

8

> After careful review and reconsideration of your request, a determination has been made that you are not entitled to the Combat Action Ribbon (CAR) for your service in Vietnam. To be entitled to the Combat Action Ribbon, it is necessary to have actively participated in a bona fide ground or surface combat fire fight. There is no evidence either by assignment or Military Occupation Specialty, that you were actively engaged in ground combat action, which included retaliatory or offense actions.
>
> You are not entitled to the Presidential Unit Citation (PUC). You did not serve with a unit that was authorized this award. 3d Service battalion, 3d Marine Division was not entitled to the PUC, although they were recognized with a Navy Unit Commendation for their service in Vietnam.
>
> Your records fail to reveal entitlement to any other awards including the Navy and Marin Corps Overseas Service Ribbon. This award is only retroactive to August 15, 1974. Your records indicate that you were released from active duty on July 19, 1968. Therefore, you are not eligible for this award.

Id.

The BCNR also denied Plaintiff's request for correction of his military service record after convening a three member executive panel. Id. at 315. This panel considered Plaintiff's application and accompanying documents, Plaintiff's naval record, applicable statutes, regulations and policies, as well as advisory opinions from the Headquarters Marine Corps. Id. In two advisory opinions, the Marine Corps Headquarters and the Military Awards Branch recommended denials of Plaintiff's claims:

> **Memorandum For the Executive Director, Board of Correction of Naval Records**
>
> Subj: ADVISORY OPINION IN THE CASE OF MR. FRANK J. VISCONI
>         000 00 1614 FORMER USMC
>
> Ref:   (a) BCNR Docket Number 02830-08 of 16 Apr 08
>         (b) DD 214 of 29 Jul 68
>         (c) NAVMC 118(5) from SNM's service record book
>
> 1. Reference (a) is Mr. Visconi's request to correct his record to reflect a promotion

to the rank of staff sergeant with a date of rank (DOR) and effective date of 2 May 1969. Reference (b) shows Mr. Visconi was released from active duty on 29 July 1968. Reference (c) verifies Mr. Visconi was promoted to the rank of staff sergeant in the United States Marine Corps Reserve effective 2 May 1969.

2. During the period of active duty identified in reference (b), Mr. Visconi was in fact a sergeant in the United States Marine Corps. Correction to the DD 214 will only be made for actions or events that took place during the active duty period. Mr. Visconi was promoted to Staff Sergeant <u>after</u> his release from active duty.

3. Based on the foregoing, it is recommended that Mr. Visconi's DD 214 remain unchanged. If Mr. Visconi's discharge certification from the Marine Corps Reserve does not reflect staff sergeant, it is recommended that MMSB recharge his record for correction.

R.W. Reilly
Major, U.S. Marine Corps
Head, Enlisted Promotion Section

Id. at 322.

**Memorandum For the Executive Director, Board of Correction of Naval Records**

Subj: REQUEST FOR ADVISORY OPINION IN THE CASE OF MR. FRANK J. VISCONI

Encl: (1) Copy of MMMA-4 ltr of 27 Mar 06
(2) Copy of MMMA-4 ltr of 30 May 06

1. As stated in the enclosures, we previously responded to, Mr. Visconi, regarding his entitlement to the Purple Heart Medal, and the Bronze Star Medal. Since he has not provided the required documentation, no further consideration can be given to his request.

E. M. Hensen
Lieutenant Colonel, USMC
Asst Head, Military Awards Branch

Id. at 348. The three member panel ultimately "found that the evidence submitted was insufficient to establish the existence of probably material error or injustice" and "the Board substantially

concurred with the comments contained in the advisory opinions." Id. at 315.

In July 2011, Plaintiff alleges that he visited his brother in Michigan and found a copy of a letter from the Commanding General of the Third Marine Division dated April 25, 1969. The letter detailed Plaintiff's receipt of the Purple Heart Medal for wounds received in Vietnam on June 18, 1965. Plaintiff forwarded this letter to BCNR and MMMA, but did not receive a response. In a letter to the BCNR, Plaintiff acknowledged that "locating anyone that can attest to being an eye witness to my action this long after that period is not likely to happen." Id. at 240. The BCNR refused Plaintiff's request for a personal appearance and explained that "[t]he Board's regulations state that a personal appearance before the Board is not granted as a matter of right but only when the Board believes that such an appearance will serve some useful purpose. The Board in your case concluded that a personal appearance is not warranted and considered your case in executive session." Id. at 305.

On August 1, 2011, Plaintiff sent a second application for correction of military records to the BDNR with a letter from Major Polderdyke. The BCNR advised Plaintiff to send the documents to the Navy Personnel command in St. Louis, Missourri, but Plaintiff never received a response. In January 2012, Plaintiff sent the BCNR a letter from Gerald R. Mollohan, confirming Plaintiff's participation in Operation Starlite. Although Plaintiff pleaded for reconsideration of his claims and submitted letters from his supporters, the BCNR denied his request to reconsider finding that "[a]lthough at least some of the evidence you have submitted is new, it is not material." (Docket Entry No. 34-2 at 184).

### B. Conclusions of Law

Under 5 U.S.C. § 706 of the Administrative Procedure Act ("APA"), a "reviewing court

11

shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." In making its determination, the reviewing court shall,

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be-
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

Id. § 706(2). Judicial review shall be based on "the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." Id. A reasoned explanation for the decision based on the administrative record, is sufficient. Id. § 706(2)(E). The APA governs review of a military correction board's decision. Id. § 706. Lefrancois v. Mabus, No. 10-1968(RMC), 2012 WL 669-139, at *2 (D.C. Cir. Nov. 30, 2012).

"A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary and capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" Dickinson v. Zurko, 527 U.S. 150, 164 (1999). In reviewing the agency's explanation, the reviewing court must consider whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971); Kroger Co. v. Regional Airport Auth., 286 F.3d 382, 389 (6th Cir. 2002) ("Under the arbitrary or capricious standard, the party challenging the agency's action must 'show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations.'") (citation omitted).

The Supreme Court "has described the APA court/agency 'substantial evidence' standard as

requiring a court to ask whether a 'reasonable mind might accept' a particular evidentiary record as 'adequate to support a conclusion.'" Dickinson, 527 U.S. at 162 (citation omitted). "Substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree which could satisfy a reasonable factfinder.'" Wilson Air Center, LLC v. F.A.A., 372 F.3d 807, 813 (6th Cir. 2004) (citations omitted); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1581 (10th Cir. 1994) ("'Substantial evidence' is more than a mere scintilla; it must be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Evidence is not substantial if it is overwhelmed by other evidence, or if it constitutes mere conclusion.") (citations omitted). If an agency's decision is supported by substantial evidence, the agency's "determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993) (citations omitted). "These two provisions of 5 U.S.C. § 706(2) are part of six which are 'separate standards.' . . . though an agency's finding may be supported by substantial evidence ... it may nonetheless reflect arbitrary and capricious action." Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc., 419 U.S. 281, 284 (1974) (citations and footnote omitted).

Judicial review of an administrative agency's decision is also limited to the administrative record: "[The] focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Fl. Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973) (internal quotation marks omitted)). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the

13

reviewing court." Lorion, 470 U.S. at 743-44 (citing Volpe, 401 U.S. at 402). This court is "limited to examining the administrative record to determine whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Davidson v. Dept of Energy, 838 F. 2d 850 (6th Cir. 1988).

In review of decision on military records, judicial deference is "greater than in any other area." Chappell v. Wallace, 462 U.S. 296, 303 (1983). A military board's decision must be arbitrary, capricious, in bad faith or contrary to law in order for a court to interfere with a board's decision. Covill v. United States, 959 F.2d 58, 63 (6th Cir. 1992).

The BCNR must review "all pertinent evidence of record" and deny relief, if the "record fails to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 723.3(e)(1)-(2). The BCNR "relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." Id. As an applicant, Plaintiff had the burden to overcome this presumption. Id. In reviewing the evidence in the record, the Secretary or his designee is "free to draw his own reasonable inferences and conclusions from the evidence before him." Mudd v. Caldera, 134 F. Supp. 2d 138, 143 (D.D.C. 2001) (citing Mail Order Ass'n of Am. v. United States Postal Serv., 2 F.3d 408, 421 (D.C. Cir. 1993)). The BCNR's determination to deny an application "shall be made in writing and include a brief statement of the grounds for denial." 32 C.F.R. § 723.3(e)(3). The brief statement of the grounds for denial "shall include the reasons for the determination that relief should not be granted ... together with all the essential facts." 32 C.F.R. § 723.3(e)(4).

Defendant first contends that Plaintiff's military records are maintained in several different

14

locations and do not reflect either an award or recommendation for the Purple Heart Medal or Bronze Star Medal. (Docket Entry No. 45 at 15). Defendant next asserts that BCNR's decision was neither arbitrary nor capricious because a three member executive panel reviewed Plaintiff's claims "in accordance with the administrative regulations and procedures . . . [and] considered the plaintiff's application, all supporting material, his Naval record and applicable statutes, regulations and policies. . . . [and] also considered two 'advisory opinions furnished by Headquarters Marine Corps.'" Id. at 15-16. Defendant described Plaintiff's citations for the Bronze Star Medal and Purple Heart Medal as not genuine because the citations were not in the standard format, the awarding authority was inconsistent with the awarding authority during the Vietnam Conflict, and the signatures appeared unauthentic. Id. at 17. Further, Defendant asserts that Plaintiff's medical records do not reflect any injury during his service in Vietnam. Id.

In response, Plaintiff contends that the decision of the BCNR was arbitrary because the BCNR did not provide Plaintiff with any evidence to contradict Plaintiff's claims. (Docket Entry No. 47 at 2). Plaintiff asserts that "he provided over 100 documents showing how records were lost, misplaced, destroyed or even worse, never even recorded" as support for his claim. Id. at 7.

The Court concludes that Plaintiff lacks sufficient evidence to support his claims of error in his military service records and that the decisions of the BCNR and the MMMA were neither arbitrary nor capricious nor against the weight of substantial evidence. Plaintiff's military service record does not reflect the accounts of service that Plaintiff attests occurred during the Vietnam Conflict. The BCNR's three member panel considered all of Plaintiff's submitted documents, application, and records. The BCNR also requested advisory opinions. Plaintiff has not shown by reliable evidence the decisions of the BCNR and the MMMA are arbitrary or capricious.

Accordingly, the Court concludes that the Plaintiff's motion for summary judgment (Docket Entry No. 35) should be denied and the Defendant's motion to dismiss (Docket Entry No. 44) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ____ day of June, 2013.

_____
WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

16